UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS FLORES, | No. C-10-04101-DMR |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| MICHAEL J. ASTRUE, *Commissioner of Social Security*, | |
| Defendant. | |

Plaintiff Luis Flores moves for summary judgment to review and reverse Defendant Commissioner of the Social Security Administration's ("Commissioner") final administrative decision, which found Flores not disabled and therefore denied his benefit applications under Titles II and XIV of the Social Security Act, 42 U.S.C. §§ 401 and 1381 *et seq*. Defendant cross-moves to affirm. In that decision, an Administrative Law Judge ("ALJ") For the reasons below, the court grants Defendant's motion and denies Plaintiff's motion.

### I. Background and Procedural History

According to the record, Flores's medical difficulties began in 1997,[1] after he experienced an on-the-job accident while working as a grocery store clerk and injured his right shoulder. (A.R. 193,

---

[1] The record is unclear whether the accident occurred in March or November of that year. (*Compare* A.R. 193, *with* A.R. 227.)

227.) On April 28, 2006, he protectively filed for Title II Social Security disability insurance benefits ("SSDI") and Title XIV supplemental security income ("SSI"), alleging a disability onset date of September 2, 1998. (A.R. 109.) Defendant denied his claims on March 6, 2007. (A.R. 81-85.) Flores moved for reconsideration, which Defendant again denied. (A.R. 72-76.) Flores subsequently requested a hearing before an Administrative Law Judge ("ALJ"). (A.R. 22.) The ALJ affirmed the denial of benefits (A.R. 22-30), and the Appeals Council declined to review the case (A.R. 5-7). The ALJ's decision therefore became the final decision of the Commissioner. Flores now seeks review of the decision pursuant to § 405(g).

Flores makes four general arguments in opposition to the ALJ's ruling. First, Flores argues that the ALJ did not properly credit the opinions of his treating physicians. Second, Flores disputes the ALJ's supposed unsubstantiated rejection of his functional limitation and pain testimony. Third, Flores contends that the ALJ failed to credit the testimony of a vocational expert ("VE") in response to a hypothetical which Flores believes accurately reflected his functional limitations. Finally, Flores asserts that the ALJ unjustifiably relied on the VE's testimony, which was inconsistent with the Dictionary of Occupational Titles ("DOT"). (Pl. Mot. 15-16.)

**II. Standard of Review**

The court will uphold an ALJ's disability determination "unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" but less than a preponderance. *Id.* If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir.2006) (citation and quotation marks omitted).

### III. Discussion

**A. Preliminary Findings: Flores's Substantial Gainful Activity**

Substantial evidence on the record supports the ALJ's undisputed finding (*see* A.R. 25) that Flores engaged in substantial gainful activity ("SGA") between September 2, 1998 -- his purported disability onset date -- and June 30, 2006. During that period, working first as a grocery store stocker[2] and then as a self-employed driver transporting vehicles from California to Mexico once a month, he earned a monthly income of $1,333.[3] (A.R. 103, 113.) Because this income qualified as SGA, *see* SSR[4] 83-34, the ALJ correctly found Flores not disabled through June 30, 2006. *See* 20 C.F.R. §§ 404.1571, 416.971. This finding renders Flores ineligible for SSI benefits through that date, *see* § 416.920(a)(4)(i), and completely ineligible for SSDI benefits, which require a claimant to establish disability prior to his date last insured, in this case June 30, 2004. *See* § 423(c). The remainder of this opinion addresses whether Flores qualifies for SSI benefits after June 30, 2006.

**B. The ALJ Gave Proper Weight to Physician Testimony in His Decision**

Flores claims that the ALJ improperly discounted "the only medical opinions in the record from 'acceptable' medical sources," those of treating physicians Drs. Jerome Davis and David Hearst.[5] (Pl. Mot. 16 (footnote omitted).) Specifically, Flores asserts that the ALJ rejected Dr.

---

[2] Flores's work at the grocery store extended his SSDI coverage through June 30, 2004, his "Date Last Insured." (*See* A.R. 109.)

[3] A later report shows that his income fell to $300 per month during the second half of 2006 and that he stopped working altogether after December 2006. (A.R. 125-27.)

[4] SSRs are the SSA's official internal interpretation of statutes and regulations, and receive deference as long as they are consistent with the Social Security Act and regulations. *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.6 (9th Cir. 2007).

[5] In one of his subsidiary contentions, Flores claims that the ALJ inappropriately construed Dr. Hearst's conclusory statement that Flores is "Permanently Unemployable" (A.R. 346) to refer only to Flores's "past job as a grocer stocker and any job involving heavy lifting" (A.R. 27). (Pl. Mot. 17-18.) In light of Dr. Hearst's previous evaluations, the court finds the ALJ's interpretation reasonable. (*See, e.g.*, A.R. 315 (noting that he filled about disability papers for Flores because "[i]t appears that he will not be able [to] return to his work which is a grocery stocker which involves lifting, especially lifting above the head").) *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("In reaching his findings, the law judge is entitled to draw inferences logically flowing from the evidence." (citation omitted)). Moreover, the ALJ had no duty to accept Dr. Hearst's statement because it was "brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Davis's assessment of Flores's physical limitations in favor of the Residual Functional Capacity ("RFC") assessment of non-physician[6] Lorraine Rucker. (Pl. Mot. 17.)

When reviewing an ALJ's medical opinion determinations, courts distinguish between three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion. *Id.*

A treating physician's opinion, while entitled to more weight, is not necessarily conclusive. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). To reject the opinion of an uncontradicted treating physician, an ALJ must provide "clear and convincing reasons." *Lester*, 81 F.3d at 830; *see also* § 416.927(d)(2); SSR 96-2p. If another doctor contradicts a treating or examining physician, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence to discount the treating or examining physician's opinion. *Lester*, 81 F.3d at 830-31. The ALJ meets this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). A nonexamining physician's opinion alone cannot constitute substantial evidence to reject the opinion of an examining or treating physician, *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990), though it may be persuasive when supported by other factors. *See Tonapetyan*, 242 F.3d 1114, 1149 (9th Cir. 2002) (noting that opinion by "non-examining medical expert . . . may constitute substantial evidence when it is consistent with other independent evidence in the record"); *Magallanes*, 881 F.2d at 751-55 (upholding rejection of treating physician's opinion given contradictory laboratory test results, reports from examining physicians, and testimony from claimant). An opinion more consistent with the record as a whole generally carries more persuasiveness. *See* § 416.927(d)(4).

---

[6] Defendant concedes that Rucker is not a physician. (Def. Mot. 2 n.2.)

In his July 7, 1999 report, Dr. Davis found that due to Flores's adhesive capsulitis, Flores "would be prohibited from reaching, pushing or pulling for more than one hour out of a workday, would be prohibited from working above shoulder level for more than one hour out of a workday, and would be prohibited from lifting or carrying more than 30 pounds above the waist level at all." (A.R. 194.) Despite this restrictive diagnosis, the ALJ invoked the findings of other treating physicians to calculate Flores's RFC. (A.R. 25; *accord* A.R. 27 (agreeing with opinions of Dr. Davis "to the extent that [Flores's] bilateral shoulder impairments prohibit him from lifting or carrying any objects above chest level" and disagreeing with Dr. Davis "to the extent that [Flores] is prohibited from reaching, pushing or pulling for more than one hour each workday").)

The court finds that the ALJ provided specific and legitimate reasons supported by substantial record evidence to deviate from Dr. Davis's opinion. The ALJ noted that Flores had undergone surgery and extensive therapy, "and has had enough time to heal since the onset of his shoulder conditions in 1997" and Dr. Davis's 1999 opinion. (A.R. 27.) To demonstrate these improvements, the ALJ pointed to the 2008 opinions of two of Flores's treating physicians, Drs. David Osborne and Burt Auerbach. (A.R. 27 (citing A.R. 335, 337).) In August of that year, Dr. Osborne noted that Flores "has no atrophy [in his shoulders]. He has a good range of motion of both shoulders. There is no crepitus. Test for impingement is positive bilaterally." (A.R. 335.) Dr. Auerbach reached similar conclusions:

> When I saw him in March, he had complaints of bilateral shoulder pain. At that time, he had essentially full range of motion of the shoulder except for some mild decrease in external rotation of the right shoulder . . . .
> Since I last saw him, he has been to Physical Therapy for 4 visits. He reports slow subjective progress. . . .
> . . . .
> On exam today, he has full range of motion of both shoulders. He was advised to continue the physiotherapy.

(A.R. 337.) The ALJ properly took these doctors' findings, which were made a decade after Dr. Davis's report, to diminish probity of Dr. Davis's assessment and to "substantiate a residual functional capacity of light work to the extent it involves the claimant's ability to lift and carry objects." (A.R. 27.) Rucker's RFC assessment (A.R. 233-34), to which the also ALJ cited (A.R. 26-27), merely reinforced Drs. Osborne and Auerbach's contemporaneous findings. In sum, these more

1 recent treating physician reports provide substantial evidence for the ALJ to give less weight to Dr.
2 Davis's 1999 assessment and greater weight to other treating physicians when calculating Flores's
3 RFC.

### C. Flores's Subjective Functional Limitations and Pain Testimony

Flores presents a host of intertwined arguments that broadly attack the ALJ's treatment of his pain testimony, physical functional limitations, and English ability.

#### 1. Flores's Pain Testimony and Accompanying Limitations

Flores contends that the ALJ "complete[ly] fail[ed] to discuss" his physical functional limitations and pain testimony. (Pl. Mot. 23.) For example, when describing his grooming activities during the ALJ hearing, Flores stated:

> I do it all but I have to do it being careful because I have fallen from the bathtub. And when I put [on] my shirt and take off my shirt I hurt my shoulders. And when I tie my shoes I also have to stand up carefully because I feel like I could fall.

(A.R. 467.) Similarly, he said that it hurt to reach up to brush his hair (A.R. 470); that when he stands, he "feel[s] like [his] back is going to break" after ten or fifteen minutes (A.R. 467); that it hurts when he sits (A.R. 467); and that he can walk for only fifteen or twenty minutes, but can do so only slowly because he may fall (A.R. 467; *see also* A.R. 117-124, 129A, 130A, 133A-35A, 147A, 153A, 155A (discussing Flores's myriad subjective pain claims)).

When evaluating a claimant's pain statements, an ALJ employs a two-step credibility analysis to determine (1) if a claimant has a medically determinable impairment that could cause the alleged symptoms, *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir.1991) (en banc); § 416.929(b), and (2) whether the claimant's statements about the intensity, persistence, and limiting effects of those symptoms are credible and consistent with objective medical evidence. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007); § 416.929(c). In this second step, an ALJ may consider, *inter alia*, inconsistencies in testimony, conduct, and daily activities when weighing the credibility of a claimant's assertions about his physical work limitations. *Orn*, 495 F.3d at 636. For example, if a claimant can perform household chores and other activities that involve similar physical tasks as a job, an ALJ may conclude that the claimant's pain does not prevent him from working. *Fair v. Bowen*, 885 F.2d 579, 603 (9th Cir. 1989).

The court finds that substantial evidence on the record supports the ALJ's finding that Flores's pain testimony lacked full credibility. After finding that Flores's medically determinable impairments "could reasonably be expected to cause the alleged symptoms," the ALJ found Flores's statements about "the intensity, persistence and limiting effects" of his symptoms "not credible." (A.R. 26.) The ALJ noted that as far back as 1999, Dr. Davis characterized Flores as having "'an extremely complex set of symptoms, the hallmark of which was pain out of proportion to the objective findings.'" (A.R. 26-27 (quoting A.R. 193).) The ALJ also found Flores's insistence that he could no longer perform work that required driving a car due to persistent back and shoulder pain unreliable, because Flores performed such work for over eight years while claiming to be disabled. (A.R. 28 (citing A.R. 113, 125) ("Not only was [Flores] able to drive long distance in spite of his alleged impairments, but he also was able to do it on a regular and prolonged basis.").) In addition, the ALJ noted that "[t]he objective medical evidence of record is sparse" (A.R. 26), a fact that an ALJ may interpret as rendering pain testimony less credible, as one would expect an individual experiencing heightened pain to more avidly seek medical help. *See* SSR 96-7p. The ALJ found, in effect, that nothing in the record demonstrated that Flores's condition had deteriorated over the course of his claimed disability, let alone to a degree that he could not perform a job less demanding than his work as a long distance car driver. Because substantial evidence supports a conclusion that Flores did not provide credible pain testimony, the court affirms the ALJ's assessment of these subjective findings.

**2. Flores's English Ability**

With respect to his linguistic limitations, Flores contests the ALJ's finding that Flores has "at the very least . . . a reasonable command of verbal elementary English" (A.R. 26; *see* A.R. 28 (finding that Flores "understands verbal elementary English. He can understand instructions in English from a supervisor but can only engage in simple and minimal verbal exchanges in English with the public.")). (Pl. Mot. 22-23.) He first criticizes the ALJ's characterization of his continuing education as "taking college level courses in English and math" (A.R. 26), noting that the English classes are community college classes for English language learners. (Pl. Mot. 22.) Flores also states that he required his son's help to fill out Social Security application forms in English; that

7

1  when he worked at the grocery store, he could not fully perform his ostensible cashier merchandise
2  and order duties due to his poor English abilities; and that he is illiterate in English and cannot
3  follow instructions in English well. (Pl. Mot. 22-23 (citing A.R. 143, 475-76).)

4        The court finds that substantial record evidence supports the ALJ's determination that Flores
5  is illiterate but still capable of understanding verbal elementary English. *See* § 416.963(b)(5). The
6  ALJ correctly found that Flores's currently attends English courses at a community college, which
7  should improve Flores's English language abilities. (A.R. 26.) Although Flores is correct in that the
8  ALJ's unartful description of his continuing education could give the impression that Flores was
9  studying English literature at a university (*see* Pl. Mot. 22), the context of the ALJ's statement
10 makes it clear that the ALJ understood Flores to be learning the English language in his studies. The
11 ALJ also reasonably concluded that Flores's work as a grocery store for twelve years required him
12 "to interact in English with supervisors and co-workers, and to some degree, customers" and
13 therefore provided him with a degree of familiarity with English in the work environment. (A.R. 26
14 (citing A.R. 95-97).) This evidence adequately supports the ALJ's conclusion that Flores "can only
15 engage in simple and minimal verbal exchanges in English with the public" (A.R. 28), and the court
16 may not disturb this finding.

17       **D. The ALJ's Hypothetical Question to the VE Was Proper**

18       Flores avers that the ALJ should have included in his hypothetical question to the VE Dr.
19 Davis's opinion that Flores

> "would be prohibited from reaching, pushing, or pulling for more than one hour out
> of a workday, would be prohibited from working above shoulder level for more than
> one hour out of a workday and would be prohibited from lifting or carrying more than
> 30 pounds above waist level at all."

(Pl. Mot. 24 (citing A.R. 194).)

      Hypothetical questions posed to a VE must "set out all the limitations and restrictions of the particular claimant, including . . . pain and an inability to lift certain weights." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (citation omitted); *accord Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir.1984) ("If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary

8

1  value."). As discussed *supra* in section B, the ALJ provided specific and legitimate reasons
2  supported by substantial evidence to disregard the physical limitations found in Dr. Davis's report.
3  Because the ALJ lawfully found that these limitations inapplicable to Flores's RFC, the ALJ did not
4  err by excluding them in his questions to the VE.[7]

### E. The ALJ's Committed Harmless Error When Questioning the VE

6  Flores claims that the ALJ erred by not following the guidelines for using VE testimony as
7  set forth in SSR 00-4p. (Pl. Mot. 25.) In its explanation of that rule, the Ninth Circuit has held that
8  "an ALJ may [not] rely on a vocational expert's testimony regarding the requirements of a particular
9  job without first inquiring whether the testimony conflicts with the Dictionary of Occupational
10 Titles." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007). If a conflict exists, the ALJ must
11 "[e]xplain in the determination or decision how any conflict that has been identified was resolved."
12 SSR 00-4p. According to Flores, when the VE testified that he could perform the jobs of car rental
13 deliverer (919.663-010), domestic chauffeur (359.673-010), ticket seller (211.467-030), small-parts
14 assembler (739.687-030), and night-patrol inspector (824.683-010), the ALJ failed to make this
15 inquiry. (Pl. Mot. 25-33.)

16 After examining the ALJ hearing transcript, the court concludes that the ALJ did not fully
17 meet his obligations under SSR 00-4p. When questioning the VE about Flores's working as a car
18 rental deliverer, the ALJ noted differences between the DOT's description of that job and Flores's
19 past work, and had the VE explain how to reconcile them. (*See* A.R. 473-74, 477-78.) However,
20 when discussing the positions of domestic chauffeur, ticket seller, small-parts assembler, and night-
21 patrol inspector, the ALJ made no inquiry about the consistency of the VE's testimony with the
22 DOT. (*See* A.R. 480-82.) Nevertheless, the court finds the ALJ's error harmless. *See Tommasetti v.*
23 *Astrue*, 533 F.3d 1305, 1038 (9th Cir. 2008) (defining harmless error as "when it is clear from the
24 record that the ALJ's error was inconsequential to the ultimate nondisability determination" (citation
25 and quotation marks omitted)). First, the VE independently acknowledged that his definition of

---

[7] It is worth noting that Flores's representative included these limitations in a question to the VE during the hearing. (A.R. 483.) In his decision, the ALJ specifically referred to the representative's question and the VE's answer, and rejected them for the same reasons that he rejected those portions of Dr. Davis's findings. (A.R. 29-30.)

ticket seller conflicted with that in the DOT and produced reasonable explanations to support his construction. (*See* A.R. 484-86.) *See Massachi*, 486 F.3d at 1154 n.19 ("This procedural error could have been harmless . . . if the vocational expert had provided sufficient support for her conclusion so as to justify any potential conflicts . . . ."). The ALJ thus accurately found Flores capable of performing a job existing in significant numbers of the national economy -- a ticket seller -- and therefore not disabled. *See* §§ 416.968(d), 416.969, 416.969a. Second, the ALJ had already found that Flores could work as a car rental deliverer, which the ALJ determined to be similar but less demanding than Flores's prior job, rendering Flores not disabled. (A.R. 28.) *See* § 416.965. Because the ALJ properly concluded, based on substantial record evidence, that Flores could work in either of these positions, the procedural errors in the ALJ's discussion of the domestic chauffeur, small-parts assembler, and night-patrol inspector positions had no effect on his determination.

### IV. Conclusion

For the reasons stated above, the court finds that the Commissioner's final decision that Flores is not disabled supported by substantial evidence and in accordance with law.

IT IS SO ORDERED.

Dated: September 19, 2011



DONNA M. RYU
United States Magistrate Judge

10